# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| RUTH ELLEN KENNEDY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL ASTRUE, ) <br> Commissioner of Social Security ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:11-cv-04101-NKL |

**ORDER**

Before the Court is Plaintiff Ruth Ellen Kennedy's Social Security Complaint [Doc. # 1]. For the following reasons, the Court reverses and remands the decision of the Administrative Law Judge ("ALJ").

**I.     Background.**[1]

This suit involves two applications made under the Social Security Act ("Act"). The first is an application for disability benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq. The second is an application for supplemental security income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. Plaintiff Kennedy contests the Defendant's finding that she was not disabled between April 30, 2002 and August 22, 2007.

**A.     Medical Evidence**

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

Ruth Kennedy has a lengthy psychiatric history beginning with an eight month admission to Fulton State Hospital at the age of 16. Dr. Sharon Carmignani prescribes Celexa for depression, Xanax for panic attacks and anxiety and Amitryptaline for insomnia.

Ms. Kennedy underwent a Neuropsychological Evaluation at Rusk Rehabilitation Center on September 21, 2005, by Dr. Stephanie Reid-Arndt which determined that the Claimant suffers from Major Depressive Disorder, Recurrent, Severe, without Psychotic Features, Panic Disorder with Agoraphobia and Memory Disturbance. On the Wechsler Adult Intelligence Scale (WAIS-3/7) Ms. Kennedy had a performance IQ of 68 which is in the mildly mentally retarded range.

At the request of the ALJ, Dr. Laura Brenner performed a psychological evaluation following the first hearing. Dr. Brenner determined that Ms. Kennedy had Major Depressive Disorder, recurrent, mild to moderate Panic Disorder without Agoraphobia, a performance IQ of 74, borderline intellectual functioning, a Global Assessment of Functioning of 50 (serious symptoms) and had three areas of marked limitations involving the ability to handle complex instructions and tasks.

The Claimant received a psychological evaluation by Russell Newton, Ph.D, in connection with her Social Security application two years prior to the hearing. Dr. Newton determined that the Claimant had taken too much anti anxiety medication. Rather than reschedule the examination, Dr. Newton diagnosed Anxiolytic Intoxication,

2

Anxiety Disorder, Not Otherwise Specified, Pain Disorder Associated with Both Psychological Factors and a General Medical Condition (chronic).

Dr. Newton again evaluated Ms. Kennedy four months prior to the first hearing and determined that she suffered from a "Pain Disorder Associated with Both Psychological Factors and General Medical Condition (Provisional) Chronic, Major Depressive Disorder, Chronic, Mild to Moderate (Medicated, Poor Response), Panic Disorder Without Agoraphobia (By History) Treated Ineffectually and a Global Assessment of Functioning of 50" which indicates serious symptoms.

Ms. Kennedy has received treatment, including pain medication and physical therapy, since 2004 from Dr. Marvin Mack and Dr. Sharon Carmignani for degenerative disc disease of her lumbar spine and later her cervical spine. She has also consulted three physicians from the Columbia Orthopedic Group: Physiatrist Jennifer Clark, M.D., and Orthopedists Dennis Abernathie, M.D., and Thomas Highland, M.D. Ms. Kennedy's original visit to the Orthopedic Group took place in 2002 following a work related back injury which she suffered while lifting a patient. The Claimant has not worked since that time. Ms. Kennedy underwent treatment at various emergency departments during the period 2001-2005: twelve visits to Columbia Regional Hospital between 2001 and 2005 and two visits to Audrain Medical Center.

Dr. Carmignani has treated Ms. Kennedy since 2005. Dr. Carmignani has completed two Physical Residual Functional Capacity Assessments. Dr. Carmignani diagnosed the Claimant with degenerative disc disease, depression, anxiety and Chronic

Obstructive Pulmonary Disease and determined that she would miss more than four days work per month if she were employed.

### B. The ALJ's Decision

On November 30, 2007, following a hearing, the ALJ found that Plaintiff had degenerative disc disease and joint disease in the cervical and lumbar spine; chronic obstructive pulmonary disease with continued smoking despite medical advice; major depression and borderline intellectual functioning to low average mental functioning with a history of panic disorder/pain disorder, but did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. (Tr. 23).

Malcom Brahms, M.D., testified at the hearing in his capacity as a medical expert on August 27, 2007. Dr. Brahms, whose specialty is orthopedic medicine, identified the objective evidence in the form of MRIs and concluded that the Plaintiff did not meet or equal any listing level of severity but was limited to sedentary work. [Tr. 26]. The ALJ found that Plaintiff's impairments would not preclude her from performing work existing in significant numbers prior to August 22, 2007, including work as a callout operator, order clerk and administrative support work. (Tr. 28-29). The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work with a need to be able to sit and stand optionally throughout the eight hour workday and mentally was restricted to simple, routine work. She was also to avoid concentrated exposure to humidity, heat,

4

Case 2:11-cv-04101-NKL   Document 17   Filed 12/01/11   Page 4 of 9

gases and fumes. The ALJ concluded that the claimant became disabled on August 22, 2007, and continued to be disabled through the date of the decision, November 30, 2007.

## II.  Discussion

### A.  Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B.  Whether the ALJ Gave Sufficient Weight to the Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ failed to give sufficient weight to the opinions of the Plaintiff's treating internist, Dr. Sharon Carmignani, who completed two Physical Residual Functional Capacity Assessments in 2005 and 2007. Dr. Carmignani diagnosed Plaintiff with degenerative disc disease, depression, anxiety and Chronic Obstructive Pulmonary Disease and determined that she would miss more than four days' work per

5

month if employed. The ALJ admits that if Dr. Carmignani's reports were accepted, they would be consistent with disability. [Tr. 25]. The ALJ stated, however, that Dr. Carmignani's findings are inconsistent with the clinical findings in the remainder of the record, which, according to the ALJ, demonstrated "mild to moderate degenerative changes in the spine without any significant worsening during the time frame relevant to the appeal." [Tr. 26].

However, the ALJ does not provide sufficient explanation of how these findings of mild to moderate degenerative changes in the spine necessarily conflict with Dr. Carmignani's findings that Plaintiff suffered disabling impairment from this condition. The presence of "mild to moderate" degenerative disc and joint disease does not preclude the presence of disabling pain on the part of any one individual, particularly when the impairment is severe and the individual suffers from several severe impairments, as does Plaintiff in this case. Dr. Carmignani's treating opinion was not concerned with the formal description of the disease's level, but instead on the disease's effects on her particular patient. Her opinion makes several observations that cannot be gleaned from a simple look at diagnostic or medical test records. For example, Dr. Carmignani determined that Plaintiff frequently experienced pain severe enough to interfere with the attention and concentration needed to perform simple work tasks. [Tr. 644]. The doctor observed that Plaintiff could only sit or stand for 15-30 minutes at a time without needing to change positions, and ostensibly based upon this observation, concluded that Plaintiff would require a job permitting shifting positions at will from sitting, standing or walking.

6

[Tr. 440-41, 644-45]. Dr. Carmignani also found Plaintiff incapable of walking one city block without severe pain or the need to rest. In the 2007 evaluation, Plaintiff was found incapable of even low stress jobs. [Tr. 644].

To discredit such observations of a treating physician such as Dr. Carmignani, the ALJ must rely on substantially more than a label of Plaintiff's disease progression as "mild or moderate." Nor is it sufficient to simply point to a differing opinion by a non-examining physician, even if that physician is a specialized expert like Dr. Malcolm Brahms.[2] Unlike Dr. Brahms, who engaged in a purely consultative review of discrete medical records such as MRI results, Dr. Carmignani actually examined the patient and treated her. *See Jenkins v. Apfel*, 196 F.3d 922 (8th Cir. 1999) (the opinion of a consultative, non-examining physician normally does not constitute substantial evidence for a decision to grant or deny disability benefits). As a treating physician, Dr. Carmignani was therefore in a superior position to examine the effects of Plaintiff's disease on her pain levels, as well as to take into account the combination of Plaintiff's physical and mental conditions on her overall functioning.

Dr. Carmignani is apparently the only treating physician in this case who has submitted a detailed evaluation of Plaintiff's ability to work during the period in question. If the ALJ wishes to favor other evidence, including Dr. Brahms' opinion and the brief

---

[2]The case law, *Brown v. Astrue*, pointed to by Defendant as favoring specialist over nonspecialist opinions is not applicable to the present case, as the Eighth Circuit there was comparing the opinion of a treating specialist with that of a treating non-specialist. 611 F.3d 941, 953 (8th Cir. 2010).

7

doctor's note submitted by the other treating physician, Dr. Mack, she must clearly present the contradictory evidence and explain why the two relatively consistent reports by a treating physician such as Dr. Carmignani fail to represent the better or more thorough medical evidence, which the ALJ has not done here. Thus, for the reasons above, the Court finds that the case must be remanded for reconsideration of the weight to be given to Dr. Carmignani's reports.

### C. Whether the ALJ Properly Evaluated the Psychological Evaluations

Plaintiff Kennedy next argues that the ALJ erred in analyzing the psychological evaluations of three examining psychologists, Dr. Newton, Dr. Reid-Arndt, and Dr. Brenner. Upon remand, the ALJ will have to reconsider her RFC finding based upon her reevaluation of Dr. Carmignani's opinions within the context of the entire medical record, including the opinions of the three psychologists. However, for the purposes of that reevaluation, the Court notes the following errors in the ALJ's analysis. First, the ALJ did not fully address the evaluations of Dr. Stephanie Reid-Arndt and Dr. Laura Brenner. The ALJ only mentions the reports in connection with their assessment of Plaintiff's IQ and cognitive functioning. She did not address the two doctors' findings with regards to Plaintiff's other mental limitations, including her depression and panic disorder. Those should be addressed on remand. Second, the ALJ indicated that Dr. Reid-Arndt's report should be discounted because the Plaintiff was sedated during examination. However, there is no evidence that Plaintiff was sedated during Dr. Reid-Arndt's exam. Instead, Plaintiff was shown to be sedated during Dr. Newton's exam which the ALJ cited

favorably. Both Dr. Newton and Dr. Reid-Arndt's reports will have to be re-examined in light of these mistakes.

Plaintiff also complains about how the ALJ evaluated the credibility of Plaintiff. On remand, Plaintiff can address these concerns directly to the ALJ.

## III. Conclusion

It is hereby ORDERED that the matter be REMANDED to the ALJ for reconsideration consistent with this Order.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: December 1, 2011
Jefferson City, Missouri